## STATE OF CALIFORNIA *v.* CHUE FAN.

*(Circuit Court, N. D. California.  June 23, 1890.)*

**REMOVAL OF CAUSES—LOCAL PREJUDICE.**
Under Rev. St. U. S. § 641, providing for removal of a cause before final hearing, "when any civil suit or prosecution is commenced in any state court, for any cause whatever, against any person who is denied, or cannot enforce in the judicial tribunals of the state, * * * any right secured to him by any law providing for the equal civil rights of a citizen," a prosecution against a Chinaman for having in his possession a lottery ticket, under a law applying to "any person," cannot be removed on the ground of local prejudice or maladministration of the law.

On Motion to Remand to State Court.
*John Lord Love,* for motion.
*Alfred Clarke,* for defendant.

SAWYER, J.  The defendant, a Chinese subject, was arrested upon a complaint filed in the police court of San Francisco, charging him with having in his possession a lottery ticket, in violation of section 70 of Ordinance No. 2187, making the act a misdemeanor.  The section provides that "it shall be unlawful for *any person* to have in his possession * * * a lottery ticket," etc., and that "any person violating any of the provisions of this section shall be guilty of a misdemeanor," etc. The prisoner, upon being arrested, filed an elaborate petition setting up numerous grounds intended to show why he could not obtain an equal protection of the laws in the state court, and asked that the case be removed to the United States circuit court for trial, in pursuance of the provisions of section 641 of the Revised Statutes of the United States; and the police judge having refused to allow the cause to be removed, he obtained a writ of *habeas corpus cum causa,* as provided in section 642, Rev. St., and the cause and the custody of the prisoner were transferred to the United States circuit court.  The state district attorney now moves, that the cause be remanded to the state court, and the custody of the prisoner restored to the sheriff of the city and county of San Francisco, on the ground, among others that, no sufficient case is made by the record and petition, under said provisions of the statute, for the removal.

That the statute is valid, and, that a case properly coming within the provisions of the statute, may be so, legally removed, is settled by the decision of the supreme court, in the case of *Strauder v. West Virginia,* 100 U. S. 303, and other cases.  The only question, then, is, whether the record and petition present a case within the purview of that statute. Upon careful examination, I am satisfied, that the supreme court, in *Virginia v. Rives,* has settled the point, that it is not.  This was a case of two negroes charged with murder, who alleged, very fully, the facts, and, that, on account of the action of the judges, and of popular prejudices, they were unable to obtain an equal protection of the laws.  The case was removed to the circuit court under the provisions of section 641, Rev. St.  In discussing the question, arising on the petition, the supreme court makes the following observations, equally applicable to this case.

v.42F.no:15—55

"If the petition filed in the state court before trial, and duly verified by the oath of the defendants exhibited a sufficient ground for a removal of the prosecutions into the circuit court of the United States, they were in legal effect thus removed, and the writ of *habeas corpus* was properly issued. All proceedings in the state court subsequent to the removals were *coram non judice* and absolutely void. This by virtue of the express declaration of section 641 of the Revised Statutes, which enacts that, ' upon the filing of such petition, all further proceedings in the state court shall cease, and shall not be resumed except as thereinafter provided. ' In *Gordon* v. *Longest*, 16 Pet. 97, it was ruled by this court that when an application to remove a cause (removable) is made in proper form, and no objection is made to the facts upon which it is founded, ' it is the duty of the state court to "proceed no further in the cause," and every step subsequently taken in the exercise of jurisdiction in the case, whether in the same court or in the court of appeals, is *coram non judice*.' To the same effect is *Insurance Co.* v. *Dunn*, 19 Wall. 214. It is, therefore, a material inquiry whether the petition of the defendants set forth such facts as made a case for removal, and consequently arrested the jurisdiction of the state court and transferred it to the federal court. Section 641 of the Revised Statutes provides for a removal ' when any civil suit or prosecution is commenced in any state court, for any cause whatsoever, against any person who is denied or cannot enforce in the judicial tribunals of the state, or in the part of the state where such suit or prosecution is pending, any right secured to him by any law providing for the equal civil rights of citizens of the United States,' etc. It declares that such a case may be removed before trial or final hearing. Was the case of Lee and Burwell Reynolds such a one? Before examining their petition for removal, it is necessary to understand clearly the scope and meaning of this act of congress. It rests upon the fourteenth amendment of the constitution and the legislation to enforce its provisions. That amendment declares that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction, the equal protection of the laws. It was in pursuance of these constitutional provisions that the civil rights statutes were enacted. Sections 1977, 1978, Rev. St. They enact that all persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. Section 1978, enacts that all citizens of the United States shall have the same right in every state and territory as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property. The plain object of these statutes, as of the constitution which authorized them, was to place the colored race, in respect of civil rights, upon a level with whites. They made the rights and responsibilities, civil and criminal, of the two races exactly the same. The provisions of the fourteenth amendment of the constitution we have quoted all have reference to *state action exclusively, and not to any action of private individuals. It is the state* which is prohibited from denying to any person within its jurisdiction the equal protection of the laws, and consequently the statutes partially enumerating what civil rights colored men shall enjoy equally with white persons, founded as they are upon the amendment, are intended for protection against *state infringement* of those rights. Section 641 was also intended for their protection against *state action, and against that alone*. It is doubtless true, that a state may act through different agencies,—either by its legislative, its executive, or its judicial authorities;

and the prohibitions of the amendment extend to all action of the state denying equal protection of the laws. whether it be action by one of these agencies or by another. Congress, by virtue of the fifth section of the fourteenth amendment, may enforce the prohibitions whenever they are disregarded by either the legislative, the executive, or the judicial department of the state. The mode of enforcement is left to its discretion. *It may secure the right, that is, enforce its recognition, by removing the case from a state court in which it is denied into a federal court where it will be acknowledged.* Of this there can be no reasonable doubt. Removal of cases from state courts into courts of the United States has been an acknowledged mode of protecting rights ever since the foundation of the government. Its constitutionality has never been seriously doubted. *But it is still a question whether the remedy of removal of cases from state courts into the courts of the United States, given by section* 641, *applies to all cases in which equal protection of the laws may be denied to a defendant. And clearly it does not.* The constitutional amendment is broader than the provisions of that section. The statute authorizes a removal of the case only before trial, not after a trial has commenced. It does not, therefore, embrace many cases in which a colored man's right may be denied. It does not embrace a case in which a right may be denied by judicial action during the trial, or by a discrimination against him in the sentence. * * * But the violation of the constitutional provisions, when made by the judicial tribunals of a state, may be, and generally will be, after the trial has commenced. It is then, during or after the trial, that denials of a defendant's right by judicial tribunals occur. Not often until then. Nor can the defendant know until then that the equal protection of the laws will not be extended to him. Certainly until then he cannot affirm that it is denied, or that he cannot enforce it, in the judicial tribunals. It is obvious, therefore, that to such a case,—that is, a judicial infraction of the constitutional inhibitions, after trial or final hearing has commenced—section 641, has no applicability. It was not intended to reach such cases. It left them to the revisory power of the higher courts of the state, and ultimately to the review of this court. We do not say that congress could not have authorized the removal of such a case into the federal courts at any stage of its proceeding, whenever a ruling should be made in it denying the equal protection of the laws to the defendant. Upon that subject it is unnecessary to affirm anything. It is sufficient to say now that section 641 does not. It is evident, therefore, that the denial or inability to enforce in the judicial tribunals of a state, rights secured to a defendant by any law providing for the equal civil rights of all persons citizens of the United States, of which section 641 speaks, is primarily, if not exclusively, a denial of such rights, or an inability to enforce them, resulting from the constitution or laws of the state, rather than a denial first made manifest at the trial of the case. In other words, the statute has *reference to a legislative denial or an inability resulting from it.* Many such cases of denial might have been. * * * as they had been, denied a trial by jury. They might have been excluded by law, from any jury summoned to try persons of their race, or the law might have denied to them the testimony of colored men in their favor, or process for summoning witnesses. Numerous other illustrations might be given. *In all such cases* a defendant can affirm, on oath, before trial, that he is denied the equal protection of the laws or equality of civil rights. *But, in the absence of constitutional or legislative impediments he cannot swear before his case comes to trial that his enjoyment of all his civil rights is denied to him.* When he has only an apprehension that such rights will be withheld from him when his case shall come to trial, he cannot affirm that they are actually denied, or that he cannot enforce them. *Yet such an affirmation is essential to his right to remove his case.* By the express requirement of the statute, his petition must set forth

the facts upon which he bases his claim to have his case removed, and not merely his belief that he cannot enforce his rights at a subsequent stage of the proceedings. The statute was not, therefore, intended as a corrective of errors or wrongs *committed by judicial tribunals in the administration of the law at the trial." Virginia* v. *Rives,* 100 U. S. 316 *et seq.*

Thus the court held the case not to be within the statute and issued a *mandamus* to the district judge directing him to remand it to the state court. That decision, in my judgment, completely covers this case. The Chinese stand exactly in the condition of those negroes with respect to a right to enjoy equal rights. Regarding the ordinance in question as a law of the state, or standing upon the same footing as a law of the state, it is perfectly fair and equal upon its face. It applies to "any person," and "every person." It is upon a proper subject for such municipal legislation. If there is a failure to execute it, or if it is unequally executed—if there is a discrimination against Chinese in its administration—that is not the fault of the ordinance. The ordinance gives no countenance to such action. The state does not thereby command or authorize this discrimination, but if it exists, as alleged,—and a strong case of discrimination in practice is, certainly, alleged, — this results from the wrongful unauthorized action, or non-action, of the courts, executive officers of the government, or other persons, precisely as in the case cited, and not from the commands, or authority of the state,—or the provisions of the law itself. And for such wrongs, in the language of the supreme court, "section 641 has no applicability. It was not intended to reach such cases. It left them to the revisory power of the higher courts of the state, and ultimately to the review of this court." Id. 319. In *Strauder* v. *West Virginia,* the discrimination was made by the statute of the state itself, and not in its execution. The statute authorized the wrong. In other words the wrong was committed by the state, and the statute was void upon its face. On that ground the case was held to fall within the provisions of section 641, and it was properly removed, and the statute set aside. That is the difference between the two cases, bringing the one within the statute, while the other is not. The wrong in the one case, is the direct necessary result of the provisions of the statute;—of its necessary operation *proprio vigore*—while in the other, it results from the maladministration of the law. The former is removable, and the latter is not, under the provisions of section 641, Rev. St. The *Case of Yick Wo,* 118 U. S. 356, 6 Sup. Ct. Rep. 1064, does not reach this question. Congress had a choice of remedies for depriving persons of the equal rights to which they are entitled under the national constitution and laws. It might perhaps, have extended the remedy provided in section 641, to the class of cases to which this belongs, as well as to that embracing *Strauder* v. *West Virginia,* but, in the opinion of the supreme court, it has not done so; but has left it to the ordinary remedy of review by the higher courts, and its judgment, and the decision cited, are controlling. The case must therefore, be remanded, and the prisoner recommitted to the custody of the sheriff, from which he was taken, and it is so ordered.